## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KENNETH ADAMS**                                   **CIVIL ACTION**

**VERSUS**                                          **NO.   17-506**

**KEITH DEVILLE, WARDEN**                           **SECTION: "E"(5)**

### REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.    Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.    *See* 28 U.S.C. § 2254(e)(2). For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### Procedural History

Petitioner, Kenneth Adams, is a convicted inmate currently incarcerated at the Winn Correctional Center in Winnfield, Louisiana.    On April 30, 2013, Adams was charged by bill of information with attempt to commit aggravated rape of a known female over the age of 65 in violation of La. Rev. Stat. § 14:27:42, aggravated battery in violation of La. Rev. Stat. § 14:60, and simple robbery in violation of La. Rev. Stat. § 14:65.[1]    Adams' counsel filed omnibus motions, including motions to suppress, a request for discovery and a bill of

---

[1] State Rec., Vol. 1 of 4, Bill of Information, 4/30/13.

particulars.[2]    On August 22, 2013, Adams' counsel filed a motion for the appointment of a sanity commission to evaluate Adams' mental competence to proceed, and, at a competency hearing, the trial court determined that Adams was competent to stand trial based on the doctors' findings.[3]    On March 10, 2014, Adams pleaded guilty to the charges pursuant to a plea agreement and was sentenced to 25 years at hard labor as to counts one and two and seven years at hard labor as to count three, all terms to run concurrent and count one to be served without the benefit of probation, parole, or suspension of sentence.[4]

That same date, the State filed a multiple-offender bill of information charging Adams as a second-felony offender.[5]    Adams entered a guilty plea to the multiple bill, and the state district court vacated the original sentence as to count one and re-sentenced him as a multiple offender to 25 years at hard labor without the benefit of probation, parole, or suspension of sentence and to run concurrent with his other sentences.[6]    Adams did not appeal the convictions or sentences.

On January 6, 2015, Adams filed an application for post-conviction relief with the state district court.[7]    In that application, he asserted his counsel rendered him ineffective

---

[2]    State Rec., Vol. 1 of 4, Omnibus Motions and Order for Pretrial-Motions, 5/6/13.

[3]    State Rec., Vol. 1 of 4, Motion to Appoint Sanity Commission to Determine Competency, 8/22/13; Minute Entry, 11/6/13.

[4]    State Rec., Vol. 1 of 4, Waiver of Constitutional Rights Plea of Guilty Form, 3/10/14; Minute Entry, 3/10/14; Commitment Order, 3/10/14; Sentencing Transcript, 3/10/14.

[5]    The assistant district attorney noted that Adams had "substantial other criminal history," but the State agreed to limit the multiple bill to a double bill.    State Rec., Vol. 1 of 4, Sentencing Transcript, p. 7, 3/10/14.

[6]    State Rec. Vol. 1 of 4, Multiple Bill of Information, 3/10/14; Waiver of Rights Plea of Guilty Multiple Offender Form, 3/10/14; Minute Entry, 3/10/14; Sentencing Transcript, 3/10/14.

[7]    State Rec., Vol. 1 of 4, Uniform Application for Post-Conviction Relief and Memorandum in Support of Petition.    Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of

assistance by failing to: (1) investigate the evidence, (2) argue the DNA evidence exonerated him, (3) give Adams the complete discovery, and (4) file a motion to suppress and a motion to dismiss or quash the attempted aggravated rape charge.    He also claimed that his guilty pleas were constitutionally defective due to inadmissible evidence and ineffective assistance of counsel, including his counsel's erroneous advice.    He sought to withdraw his guilty plea to the attempted-rape charge.    After the State filed a response, the state district court denied the application for post-conviction relief on March 26, 2015.[8]    On July 23, 2015, Adams filed an application for writ with the Louisiana Fifth Circuit Court of Appeal.[9]    The Fifth Circuit denied Adams' writ application on the merits on September 17, 2015.[10]

On September 30, 2015, Adams filed a writ application with the Louisiana Supreme Court.[11]    In his supporting brief, Adams attacked the sufficiency of the evidence as to the attempted aggravated rape charge.    On December 16, 2016, the Louisiana Supreme Court denied Adams' petition for writ of certiorari finding

> Relator failed to raise his insufficient evidence claim in the courts below. *Segura v. Frank*, 93-1271 (La. 1/14/94), 630 So.2d 714, 725.    Moreover, relator is not entitled to assert an insufficient evidence claim as his unconditional guilty plea waived all non-jurisdictional defects.    *See State v. Crosby*, 338 So.2d 584, 586 (La. 1976).[12]

---

a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system." *Causey v. Cain*, 450 F.3d 601, 607 (5th Cir. 2006).    The post-conviction application made a part of the state record is dated January 6, 2015.

[8]    State Rec., Vol. 2 of 4, State District Court Order denying post-conviction relief, 3/26/15.

[9]    State Rec., Vol. 3 of 4, 5th Circuit Writ Application, 15-KH-467, 7/28/15 (dated 7/23/15).    Adams submitted a letter with his writ application explaining that he did not receive the state-court order until July 15, 2015 and asking for leniency.    State Rec. Vol. 3 of 4, Letter, (undated).

[10]    State Rec., Vol. 3 of 4, *State v. Adams*, 15-KH-467 (La. App. 5 Cir. 9/17/15) (unpublished).

[11]    State Rec., Vol. 4 of 4, La. Supreme Court Writ Application, 15 KH 1897, 10/16/15 (dated 9/30/15).

[12]    *State ex rel. Adams v. State*, 2015–KH–1897 40 (La. 12/16/16), 207 So. 3d 10 (per curiam).    State

On January 17, 2017, Adams filed the instant application for habeas corpus relief.[13] In that application, Adams claims he was denied effective assistance of counsel for failing to investigate the police report, which he claims would have shown he did not rape the victim because the DNA was negative as to Adams, and for failing to file a motion to suppress statements and a motion to quash/dismiss.    He also claims his guilty plea was unconstitutional due to ineffective assistance of counsel for failing to: (1) interview the victim, (2) file pretrial motions, (3) give Adams a complete copy of discovery, and (4) argue that Adams' DNA was not found as evidence of the attempted aggravated rape.    He also appears to contend that his counsel coerced him to plead guilty.

The State concedes that Adams' petition is not successive and that the federal application is timely.    The State argues that the claims are not exhausted.    Specifically, the State asserts Adams failed to present his claims for relief to the Louisiana Supreme Court. It alternatively contends that the claims should be dismissed on the merits.[14]

**Facts**[15]

According to the record, on January 5, 2013, Adams robbed a cashier at the Circle K Convenience Store in Jefferson Parish.    Upon the cashier opening the register when Adams indicated he intended to buy an item, Adams yelled for the cashier to give him all the money

---

Rec., Vol. 4 of 4.

[13]  Rec. Doc. No. 1, Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus, certified January 17, 2017.

[14]  Rec. Doc. No. 11.

[15]  The facts of the case were not fully developed because Adams pleaded guilty.    The facts as described herein were gleaned from the information, Preliminary Examination Hearing Transcript, the statements of the victim and Adams, and the *Boykin* colloquy.

4

and grabbed the money from the register.    The cashier attempted to physically stop Adams but was unable to do so.

On January 6, 2013, Adams broke into the home of an 83-year old woman.    When the woman returned to the home, Adams knocked her to the ground causing multiple injuries, abrasions, and contusions.    Adams dragged the woman down the hallway and threw her on a bed.    He removed her clothing and attempted to rape her despite her attempts to resist him.    Adams, however, was unable to get an erection.    When the victim yelled that the police were on their way, Adams took various items of jewelry and fled the home.    The victim called 911.    Adams, who was apprehended approximately one-half mile from the home shortly after the incident, was found to have several items of jewelry on his person, as well as car keys.    The victim identified Adams from a photo lineup and also identified the jewelry and keys found on Adams' person as belonging to her.    Adams' DNA was found under the victim's fingernails.

An investigation of the victim's home revealed broken glass panes on the rear door. A palm print matching that of Adams was lifted from the glass.    Two tools were found next to the door.    Adams gave a statement to police wherein he admitted to using tools from the victim's shed to break in through the back door of the home.    He admitted to breaking into the home for the purpose of stealing items to be pawned for drug money.    Adams claimed that he had an ongoing sexual relationship with the victim.    He claimed that the victim willingly went into the bedroom with him and took her clothes off.    He further claimed that he fondled her but did not have intercourse with her.

Adams also admitted going to the Circle K and snatching money from the clerk.    He told police he thought the clerk was overcharging him so he wanted his money back but that

he may have taken more money than he gave her.

## Preliminary Review-Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."   *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotation marks omitted).    The United States Supreme Court has explained:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.   Under our federal system, the federal and state courts are equally bound to guard and protect rights secured by the Constitution. Because it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation, federal courts apply the doctrine of comity, which teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter.

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citations, footnote, quotation marks, and brackets omitted).

"To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."   *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted).   That requirement applies to all levels of review in the state-court system, meaning that a petitioner's federal claim must have been "fairly presented" to "each appropriate state court (including a state supreme court with powers of discretionary review)."   *Baldwin*, 541 U.S. at 29 (emphasis added).    "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review

when that review is part of the State's ordinary appellate review procedures.    *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).    Thus, in order to exhaust fully, the substance of the federal habeas claim must be fairly presented to the highest state court.    *See Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).    ).    "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement."    *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). For exhaustion purposes, it is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin*, 541 U.S. at 27.

Adams' original application for post-conviction relief included claims that his counsel rendered ineffective assistance and that his guilty plea was unconstitutional.    He also presented those claims in his writ application to the Fifth Circuit seeking review of the state district court's denial of relief.    Adams did not specifically identify those claims in the writ application presented to the Louisiana Supreme Court.    Instead, in his supporting brief, which he repeatedly referred to as a "supplement" to his application for post-conviction relief, he attacked the sufficiency of the evidence relating to the attempted aggravated rape charge.[16]    Adams, however, attached to his writ application an appendix which included the brief he filed in support of his post-conviction application as well as the brief filed with his Fifth Circuit writ application.

---

[16]    State Rec., Vol. 4 of 4, La. Supreme Court Writ Application, 15 KH 1897, 10/16/15 (dated 9/30/15); Original Brief on the Merits, pp. 1, 3, 5, and 6.

Adams' failure to present his ineffective-assistance-of-counsel and unconstitutional guilty-plea claims within the four corners of the writ application filed with the Louisiana Supreme Court does not appear to satisfy the exhaustion requirement dictated by the Supreme Court in *Baldwin*.     *See U.S. ex rel. Class v. Johnson*, No. 10 C 2819, 2010 WL 3273538, *9 n. 2 (N.D. Ill. Aug. 18, 2010) (based upon *Baldwin*, the district court rejected petitioner's argument that the attachment of a lower court opinion to a writ application filed before the state supreme court was sufficient for exhaustion purposes).     However, in a case involving circumstances similar to those in this case, the United States Court of Appeals for the Ninth Circuit found that state-court remedies had been exhausted.

In *Miller v. Quinn*, 307 F. App'x 96, 98 (9th Cir. 2009), in his brief to the Washington Supreme Court, petitioner "did not refer to the federal constitution, federal statutes or case law, or state case law analyzing federal constitutional issues."     The petitioner however, had "cited such law quite extensively" in the petition filed with the Washington Court of Appeals. The prisoner attached his lower court "petition and accompanying briefs as appendices to his motion for discretionary review to the Washington Supreme Court."     *Id.*     Thus, the Ninth Circuit found that the state supreme court filing satisfied the exhaustion requirement, distinguishing *Baldwin* because the petitioner actually attached his lower court pleadings to his state supreme court brief, whereas the petitioner in *Baldwin* had not.

> [T]he Supreme Court's concern in *Baldwin* was that state courts should not be forced to search for federal claims by reading through the whole of the lower court record.     *See* 541 U.S. 27, 32, 124 S. Ct. 1347, 158 L. Ed. 2d 64 (2004) (holding that a prisoner must present his or her claim in "a petition or a brief (or a similar document)" in order to exhaust), *rev'g*, 282 F.3d 1184 (9th Cir. 2002) [emphasis added].     In *Baldwin*, the lower court opinion was not filed with or attached to the petition filed in the state supreme court, unlike the . . . petitions here . . . .     *See Reese v. Baldwin*, 282 F.3d at 1194-95 (T.G. Nelson J., dissenting) ("[T]he majority would . . . requir[e] [state supreme court justices] to root through the record for rare truffles of legal support.").     Since

> Miller's [earlier] petition was filed as an appendix to his motion for
> discretionary review, Miller's federal claim was presented to the Washington
> Supreme Court in "a similar document" to his brief [emphasis added].

*Id*; *see also Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (petitioner exhausted his state-court remedies where his federal claims were raised in his petition filed with state appellate court, which was also attached as an appendix to his filing before the state supreme court).

The Court is not convinced that the *Baldwin* Court, by virtue of the language, "(or a similar document)," intended that attached lower-court pleadings specifically setting forth federal claims are insufficient to put a state supreme court on notice of said claims for exhaustion purposes. However, even if *Baldwin* could be read so broadly as to indicate that Adams has not exhausted his state-court remedies, because Adams' claims are clearly without merit, the Court will address them without requiring more specific exhaustion. 28 U.S.C. § 2254(b)(2).

### Standards of Review on the Merits

Title 28 U.S.C. § 2254(d)(1) and (2), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the applicable standards of review for pure questions of fact, pure questions of law, and mixed questions of both. A state court's purely factual determinations are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). With respect to a state court's determination of pure questions of law or mixed questions of law and fact, a federal court must defer to the decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1) ] have independent meaning." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state-court decision is "contrary to" clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S. Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent does not warrant habeas relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously

unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "no possibility fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington*, 562 U.S. at 102 (emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S. Ct. 1855, 1866 (2010) ( "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The AEDPA's deferential standard of review under Section 2254(d) and *Williams*, 529 U.S. at 362, applies only to claims adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d). With respect to claims that are not fully adjudicated on the merits in state court, the deferential AEDPA standards of review do not apply. *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011); *Henderson v. Cockrell*, 333 F.3d 592, 597 (5th Cir. 2003). Instead, the federal courts review those claims under pre-AEDPA de novo standards of review. *Id.* at 598 (citing *Jones v. Jones*, 163 F.3d 285, 299-300 (5th Cir. 1998) (applying de novo standard of review to ineffective assistance of counsel claims that were raised in state court, but not adjudicated on the merits)); *Carty v. Thaler*, 583 F.3d 244, 253 (5th Cir. 2009).

### Claims for Relief

1. *Ineffective Assistance of Counsel*

In his intertwined claims, Adams claims that his trial counsel was constitutionally ineffective for failing to conduct adequate investigation and raise a viable defense via pretrial motions rather than offering misguided advice to enter a guilty plea to the charge of

attempted aggravated rape.[17]    In faulting his counsel's pretrial preparation, he claims his counsel did not review the police report, DNA evidence, and the victim's statement, and that counsel failed to interview the victim.    He claims his counsel was also ineffective for failing to file pretrial motions, such as a motion to dismiss or to quash the attempted aggravated rape charge and a motion to suppress.    He additionally asserts that his counsel failed to provide him with parts of the discovery and met with him on only three occasions.

The state district court rejected Adams' claims that his counsel rendered ineffective assistance raised on post-conviction relief, stating:

> The petitioner now asserts that his attorney, Autumn Town, rendered a constitutionally ineffective performance.    In reviewing cases such as this, the Supreme Court of the United States has recognized:
>
>> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raised independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.
>
> *Tollet v. Henderson*, 411 U.S. 258, 267 (1973), quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970).
>
> In his memorandum, the petitioner argues that if counsel had inspected the police report, she would have seen that he was burglarizing the victim's home and that the DNA evidence showed he did not rape the victim.    The petitioner asserts that the prosecution did not have any of his DNA.    He further asserts "victim stated she was beaten unmercifully, dragged to her bedroom and her clothes were ripped off.    She said he proceeded to have sexual intercourse with her."    (Petition, page 3 of 9).
>
> It is clear that the petitioner has a Sixth Amendment right to effective legal counsel.    Under the well-known standard set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Washington*,

---

[17] Adams' habeas claims solely relate to his attempted aggravated rape conviction.    He does not attack his convictions or sentences relating to the burglary and simple-robbery charges.    In fact, Adams seeks "to be allowed to plea to a new deal to all charges except for the attempted aggravated rape charge, and to be allowed a sentence of 15 years, which would be a reduction of sentence, and that the attempted rape charge be dropped, respectively."    Rec. Doc. No. 1, p. 21.

491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *State v. Legrand*, 2002-1462 (La. 12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted. It is absolutely essential that both prongs of the *Strickland* test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance. *State v. Soler*, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

The petitioner's contention that his attorney was deficient in not arguing that DNA evidence exonerated him from the attempted rape charge is based on legally erroneous conclusion. It is well-settled that the victim's testimony alone, if believed by the trier-of-fact, is sufficient to convict a defendant of a sexual offense. *State v. Alexander*, 12-194 (La.App. 5 Cir. 5/16/13), 119 So.3d 120, 126.

The petitioner fails to prove either prong of the *Strickland* test. The evidence against him was overwhelming. As the state argues, the victim, who knew the petitioner previously, made a positive identification of him, fingerprint evidence placed him inside the home, and he was found with items taken in the burglary.

After review, the court finds that the petitioner has not met his burden of proof and this claim will be denied.

. . .

In a related claim, the petitioner contends his attorney was constitutionally ineffective in her representation. He states his defense counsel failed to file motions and "allowed her client to take a plea deal without arguing at an evidentiary hearing, the statements, reports, or interviewing the State's witness or at least give the defendant a copy of his discovery before pressuring him to make an intelligent, knowingly illegal, unfair plea deal without a discovery." He also argues his attorney failed to argue the DNA evidence that could potentially freed the defendant.

The record contains extensive files and appearances by counsel, prior to the entry of a favorable guilty plea. The court notes that a preliminary

hearing was held on February 7, 2013, wherein Commissioner Joyce found probable cause to exist. Counsel filed many pre-trial motions, including motions to suppress the statement, the evidence, and the identification. A pre-trial hearing was held on June 13, 2013, wherein the court found discovery satisfied. Counsel moved for a competency hearing, which was heard on November 6, 2013. The record also reveals receipt of discovery on numerous occasions.

The court conducted a careful *Boykin* colloquy with the petitioner before accepting his favorable plea of guilty. The petitioner's sworn responses and the Waiver of his Constitutional Rights form reveal that the petitioner was fully informed and then knowingly waived his rights. Significantly, the court asked the petitioner if he was satisfied with his attorney; the petitioner stated in the affirmative, without qualification.

Represented by counsel, in open court, the petitioner pled guilty to serious crimes. As a result, he received a favorable sentence far below the maximum life sentence allowed by law. Contrary to his contention, the petitioner benefited greatly from his counsel's representation. He establishes no basis for relief.

After review, this court finds that the petitioner has not met his burden of proof and this claim will be denied.[18]

The Fifth Circuit Court of Appeal, in denying Adams' related writ application, found:

After review, we do not find that the trial court erred in denying Relator's APCR. As noted by the trial court, Relator's contention that his attorney was deficient by not arguing that the DNA exonerated him from the attempted aggravated rape charge is based on a legally erroneous conclusion. There was other evidence available, *e.g.*, the victim's testimony, that would have been sufficient to convict him of that charge. Additionally, Relator failed to prove that his pleas were constitutionally defective due to ineffective assistance of counsel on the basis that his attorney failed to use the DNA test to exonerate him. Again, Relator's assertion is legally erroneous.[19]

As previously indicated, the Louisiana Supreme Court did not address the claims.

The United States Supreme Court has established a two-pronged test for evaluating claims of ineffective assistance of counsel. Specifically, a petitioner seeking relief must demonstrate both deficient performance by counsel and that the deficient performance

---

[18] State Rec., Vol. 2 of 4, State District Court Order denying post-conviction relief, 3/26/15.

[19] State Rec., Vol. 3 of 4, *State v. Adams*, 15-KH-467 (La. App. 5 9/17/15) (unpublished).

prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, *i.e.*, deficient performance or actual prejudice, it may dispose of the ineffective-assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.' " *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the prejudice prong of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In the context of guilty plea, a petitioner "must show that there is a reasonable probability that, but for

counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard. *Cullen*, 563 U.S. at 190.

Adams contends that lack of preparation and incompetent advice by defense counsel ultimately resulted in an involuntary guilty plea to the attempted aggravated rape charge. He maintains that he had a meritorious defense to the attempted aggravated rape charge, based on the police report, the lack of DNA evidence from the rape kit and the questionable credibility of the victim. He claims that, had his counsel reviewed the discovery and filed the appropriate motions, the aggravated rape charge may have been dropped. He therefore submits that his ill-advised guilty plea resulted in a conviction on a charge for which he is innocent and, as a result, a longer sentence

With regard to the adequacy of the investigation, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Adams presents only self-serving allegations in support of his contention that counsel was ineffective for failing to adequately investigate the evidence. He presents no objective

evidence at all to establish either that his counsel in fact failed to conduct a proper investigation.    Here, the record shows that counsel actively engaged in discovery and that discovery, including but not limited to the police reports, the victim's statement, Adams' statement, and the DNA report, was provided to defense.[20]    While Adams claims that his counsel failed to provide him with "parts" of the discovery, he does not specify the discovery that was not provided. Further, he has failed to establish how he was prejudiced by counsel's failure to share the complete discovery with him.

Adams argues that the lack of DNA evidence and marks on the victim as well as the victim's statement that she did not think there was any penetration proved he did not rape the victim.    The actual offense charged, however, was attempted aggravated rape.    Thus, the absence of spermatozoa or seminal fluid implicating Adams was of no matter. Additionally, neither penetration nor emission are required to sustain a conviction for attempted aggravated rape.    *State v. Castro*, 2016-0284 (La. App. 4 Cir. 12/14/16), 206 So. 3d 1059, 1066 (citing La. Rev. Stat. § 14:41B).

Further, contrary to his claim of innocence, the record evidence made available to defense counsel overwhelmingly supported the State's case.    The evidence of record reflects that Adams broke into the elderly victim's home.    When the victim returned, Adams dragged her to the bedroom, undressed her, and attempted to have non-consensual sexual intercourse with her.    The victim detailed the encounter and stated that Adams "took out his private part," got on top of her, and told her to spread her legs so he could get

---

[20]    State Rec., Vol. 1 of 4, Minute Entry, 6/13/13; Notice of Discovery Provided to Defense, 6/13/13; Minute Entry, 7/25/13; Items Turned Over to Defense, 8/1/13; Item Turned Over to Defense, 8/21/13.

closer to her body.    The victim advised that Adams was unable to get an erection.    The victim positively identified Adams as the perpetrator.

While Adams contends that the victim was not credible, other evidence supports both her statement that Adams attempted to rape her while she tried to fend him off as well as he identification of Adams as the perpetrator.    The victim suffered minor injuries to her hands, and Adams' DNA was found under the victim's fingernails.    Adams' palm print was obtained from the scene of the crime and he was found to have the victim's property on his person.    Additionally, Adams made inculpatory statements to police admitting that he broke into the victim's home and stole her jewelry to pawn it for drug money.    He also admitted to fondling the victim.    There was simply no evidence that would have exonerated Adams of the attempted aggravated rape charge.

As for Adams' claims that his counsel failed to file any pretrial motions, those claims are undermined by the record.    As previously explained, counsel filed various pretrial motions to determine competency, for discovery, and to suppress.    While Adams argues that his counsel was ineffective for specifically failing to file a motion to dismiss or to quash the information, he fails to suggest any legal basis for counsel to do so.    A preliminary hearing was conducted prior to the acceptance of the charges, and the Commissioner found probable cause to hold Adams.[21]    Further, the factual-innocence argument Adams suggests simply is not one of the grounds on which an information can be quashed.    La. Code Crim. P. art. 532; *see State v. Rembert*, No. 55807 (La. 4/24/75), 312 So. 2d 282, 284 ("The motion to quash is essentially a mechanism by which to raise pre-trial pleas of defense, those which

---

[21]   State Rec. Vol. 4 of 4, Preliminary Examination Transcript, 2/7/13.

do not go to the merits of the charge .... [T]he the question of factual guilt or innocence of the offense charged is not raised by the motion to quash." (emphasis added)); *State v. Trevino*, 07-870, (La. App. 5 Cir. 5/27/08), 985 So. 2d 851, 856-57 ("When considering a motion to quash, the trial court must accept as true the facts contained in the bill of information and the bills of particulars, and determine as a matter of law and from the face of the pleadings, whether a crime has been charged; while evidence may be adduced, such may not include a defense on the merits.    Fact-intensive inquiries regarding the sufficiency of the evidence and merits of the case are not properly raised by a motion to quash; rather, they should be decided on the evidence at trial.") (footnotes and citations omitted); *State v. Schmolke*, 2012–KA–0406 (La. App. 4 Cir. 1/16/13), 108 So. 3d 296, 298–99 ("So long as the facts accepted as true can conceivably satisfy an essential element of the crime, the accused person can be compelled to stand trial for the charge.    Essentially, the inquiry is whether any conceivable set of the facts as alleged in the bill of information together with those specified in the bill of particulars (when particulars have been provided) if found credible by the trier of fact can support a conviction." (citation and quotation marks omitted)).

Because there were no valid grounds to support a motion to dismiss or quash the indictment, counsel was not deficient for failing to file such a motion.    Failure to file a frivolous motion or lodge a futile objection does not cause counsel's performance to fall below an objective level of reasonableness.    *See United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000) (citing *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998)); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (citing *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990)).    Furthermore, a decision whether to file a motion to quash is generally a matter of professional judgment.    *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965).

Adams' claim that his counsel failed to file a motion to suppress his statement is false. The record shows that counsel filed a motion to suppress Adams' statement, the evidence and the identification.[22]    Ultimately, the motion was not ruled on as Adams chose to plead guilty on the day the state district court was to hear the motion.    However, even assuming that Adams' statement to police were suppressed based on his use of drugs prior to his statement, the suppression of the statement would not have been a basis to dismiss the attempted aggravated rape charge.    The State could have proceeded against Adams with the other evidence which was, as previously detailed, overwhelming evidence of his guilt.

Adams also argues that his counsel was further ineffective for failing to interview the victim.    Adams, however, offers no evidence demonstrating that his counsel did not interview the victim.    In any event, the victim was not obligated to speak with defense counsel.    La. Rev. Stat. § 46:1844(C)(3) (providing that the victim and the victim's family may refuse any requests for interviews with the attorney for the defendant or any employee or agent working for the attorney for the defendant).

Adams next claims that defense counsel met with him at the jail on only three occasions, which did not suffice for effective communication or proper representation. Adams therefore concedes that his attorney met with him personally at least three times before he entered his guilty plea.    He offers no reason why additional visits at the jail were necessary.    Moreover, Adams has failed to demonstrate or even allege how additional meetings would have affected the outcome of the proceedings.    *See Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005) (quoting *United States v. Olson*, 846 F.2d 1103, 1108 (7th Cir. 1988)

---

[22]    State Rec., Vol. 1 of 4, Omnibus Motions, 5/6/13.

("there is no established minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel")); *Schwander v. Blackburn*, 750 F.2d 494, 499-500 (5th Cir. 1985) (brevity of consultation time between a defendant and his counsel does not in-and-of-itself establish ineffective assistance of counsel).    As the United States Fifth Circuit observed, "[i]n the guilty plea context... '[e]ffective assistance may be rendered in the twenty or thirty minutes the appointed lawyer said he spent with [the defendant], or counsel may remain ineffective despite a month of futile exertions.' "    *Schwander v. Black*, 750 F.2d 494, 500 (5th Cir. 1985) (quoting *Diaz v. Martin*, 718 F.2d 1372, 1378 (5th Cir. 1983)), *cert. denied*, 466 U.S. 976, 104 S. Ct. 2358, 80 L. Ed. 2d 830 (1984).

　　Not only has Adams failed to establish that his counsel's performance was objectively unreasonable, Adams has failed to show with any reasonable probability that, but for defense counsel's alleged deficiencies, he would not have pleaded guilty and would have insisted on going to trial.    Significantly, Adams does not even *allege* that, but for counsel's alleged deficiencies errors, he likely would not have entered the guilty plea as to the aggravated rape charge and would have proceeded to trial.    Rather, he speculates that, but for his counsel's ineffective assistance, the attempted-rape charge may have been dropped and he would have been allowed to plead to the two remaining charges.    Without a showing that there is a substantial probability that he would not have entered a guilty plea, and would have insisted on proceeding to trial if his attorney had not committed the alleged errors, this Court cannot find that he was prejudiced by his counsel's performance under the standards set forth in *Hill* and *Strickland.*

Regardless, under the circumstances, no reasonable probability exists that Adams would have rejected the beneficial plea bargain and insisted on going to trial but for counsel's alleged incomplete review and preparation.    Adams has failed to offer any proof that his counsel's alleged failures actually played a role in his ultimate decision to plead guilty. During the plea colloquy, Adams unequivocally stated that he was satisfied with counsel's representation and handling of his case.    He maintained his desire to plead guilty even when informed he had the right to proceed to trial.    Given the serious charges against him, the guilty plea provided him with a clear benefit.    Adams agreed to plead guilty and receive concurrent sentences of 25 years for attempted aggravated rape and aggravated burglary and seven years as to simple robbery, rather than proceed to a jury trial where he could face a mandatory life sentence.    By accepting that beneficial plea agreement and pleading guilty, Adams guaranteed himself a significantly lower sentence.

For the foregoing reasons, Adams has failed to establish that counsel's performance was deficient or prejudicial under the *Strickland* test.    He is not entitled to federal habeas corpus relief on this claim.

2.    *Unconstitutional Guilty Plea*

Petitioner claims his guilty plea to the aggravated attempted rape offense was involuntary.    He claims his counsel pressured him in to taking the plea.

"A guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently."    *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000) (citing *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995)).    "If a defendant understands the charges against him, understands the consequences of [the] plea, and voluntarily chooses to plead ... without being coerced to do so, the ... plea ... will be upheld on federal review."    *Frank v. Blackburn*,

646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).    A plea therefore "is constitutionally valid only to the extent it is both 'voluntary' and 'intelligent.' "    *Bousley v. United States*, 523 U.S. 614, 618, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (quoting *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)).    "The voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.' "    *Id.* (quoting *Brady*, 397 U.S. at 749).    Pleas are involuntary when induced by threats, improper promises, deception, or misrepresentation. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).

A plea qualifies as intelligent when the criminal defendant enters it after receiving " 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.' "    *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 61 S. Ct. 572, 85 L. Ed. 859 (1941)).    A "plea is invalid if the defendant does not understand the nature of the constitutional protection that he is waiving or if he has such an incomplete understanding of the charges against him that his plea cannot stand as an admission of guilt."    *James*, 56 F.3d at 666 (citing *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976)).    When a habeas petitioner challenges the validity of his guilty plea, he carries the burden of proving that his plea was not, in fact, knowing and voluntary.    *See*, *e.g.*, *Hines v. Louisiana*, 102 F. Supp. 2d 690, 694 (E.D. La. 2000).    For the following reasons, it is clear that Adams has not met his burden of proof in this case.

The record in this case reflects that Adams was informed of his rights and signed a written waiver of those rights.    He stated in open court that he was not forced to enter the guilty plea and that he understood he had the right to plead not guilty.    He further

acknowledged that he understood the rights he was waiving, including the privilege against self-incrimination, the right to trial by jury and the right to confront his accusers in court. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).    He was advised of the nature of the charges to which he was pleading guilty and he admitted to each of those charges as set forth by the trial court.    He specifically denied being forced, threatened, or coerced to enter the guilty plea.    And at no time during his plea colloquy did Adams acknowledge any reason for his guilty pleas other than his actual guilt.

Further, in the "Defendant's Waiver of Constitutional Rights Plea of Guilty" form signed by Adams, his counsel, and the judge, Adams acknowledged that he was "satisfied with the representation of [his] attorney in this case," had "not been forced, coerced or threatened to enter this guilty plea," had been advised of the sentence he would receive in exchange for his plea, and understood "all possible legal consequences of pleading guilty."[23] His unsupported allegations here that his counsel pressured him in to taking the plea fail to provide compelling evidence as to why the statements he made during the plea colloquy should not be accorded weight and accepted as true.

Adams also contends that he was "forced by threats of [a] life sentence" due to his past criminal history to accept the plea bargain.[24]    To the extent that Adams claims that the State threatened to file a third- or fourth-felony offender bill and that somehow constituted unconstitutional coercion to plead guilty, his claim runs counter to well-established case law that recognizes that it is constitutionally permissible to use the threat of more severe

---

[23]    State Rec., Vol. 1 of 4, Defendant's Waiver of Constitutional Rights Plea of Guilty, 3/10/14.

[24]    Rec. Doc. No. 1, p. 20.

punishment to encourage a guilty plea. *See Bordenkircher v. Haynes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978) (holding that it is not a violation of due process for a prosecutor to carry out a valid threat made during plea negotiations to have the accused re-indicted on more serious charges on which he is plainly subject to prosecution if he does not plead guilty to the offense with which he was originally charged); *Frank v. Blackburn*, 646 F.2d at 883 (5th Cir. 1980) (noting that the Supreme Court's plea bargaining decisions make it clear that a state is free to encourage guilty pleas by offering substantial benefits to a defendant, or by threatening an accused with more severe punishment should a negotiated plea be refused) (citing *Corbitt v. New Jersey*, 439 U.S. 212, 99 S. Ct. 492, 58 L. Ed. 2d 466 (1978)). Coercion is simply not established by a guilty plea that represents a voluntary and intelligent choice among the alternatives available to a defendant to avoid a possible longer sentence. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970).

Nor has Adams established that his decision to plead guilty was coerced by any misrepresentation or misstatement by counsel that he could be charged as a third- or fourth-felony offender. The record shows that Adams is indeed a fourth-felony offender, having prior convictions for purse snatching, simple robbery in 2003, and simple robbery in 2006. Thus, Adams faced the potential of risk of a life sentence had he been found guilty after a trial and charged as either a third- or fourth-felony offender. La. Rev. Stat. § 15:529.1(A)(3)(b); La. Rev. Stat. § 15:529.1(A)(4)(b). It was counsel's duty to advise Adams of his potential maximum sentencing exposure in discussing the benefits of accepting the plea agreement. Any discussion counsel had with Adams about the possibility of a life sentence was not false, misleading or coercive given Adams' criminal history.

Adams' plea colloquy plainly demonstrates that his plea was voluntary and that he has presented no evidence to the contrary.    The record demonstrates that Adams was aware of the charges against him, the constitutional rights he was waiving, and the consequences of his plea.    He has not established that his plea was coerced or otherwise involuntarily or unknowingly made.    He is not entitled to federal habeas relief as to this claim.

### RECOMMENDATION

**IT IS RECOMMENDED** that Adams' application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[25]

New Orleans, Louisiana, this ___14th___ day of _____September_____, 2017.

**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[25] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.